Burks, J.
When the services were rendered, as claimed, for which payment is demanded in this suit by the appellees, Alger and wife, Mrs. Harshberger, the alleged beneficiary, was a married woman living apart from her husband under a deed of separation executed many years before. On no conceivable ground can it be successfully maintained that the husband was ever personally liable for these alleged services. It is not pretended that they were rendered under any express contract made with him, or that he ever became bound by any subsequent ratification or acquiescence. He resided in a distant state, to which he removed soon after the agreed separation from his wife. He never returned to this state, and after his removal there was never any correspondence or communication, so far as appears, between him and his wife or his daughter, Mrs. Alger, both of whom continued toreside in Virginia. It is equally plain that there was no implied contract on his part to pay for the alleged services; and this is so, whether the deed of separation be treated as partially valid or wholly void. If the deed be considered as valid and binding on him, to the extent of the covenants and assignments made by him, he was not bound even for necessaries furnished to the wife after the separation; for provision was made for her support and maintenance, with which provision she and her trustee were satisfied, and it was *59 sufficient, as the large residuum of the trust fund undisposed of at her death clearly shows. Moreover, it was expressly stipulated in the deed that he was not to be bound for the payment of any debts subsequently contracted by the wife. This covenant, to which the trustee was a party, was pursuant to a preliminary written agreement containing a stipulation of like character, to which Mrs. Alger, then unmarried and sui juris, was also a party, she having an interest in the subject matter. If the husband was bound by his covenants', she was also bound by the agreement referred to, and, in such case, there could be no implied obligation on his part to discharge any liability on account of dealings or transactions between her mother and herself.
If, on the other hand, the deed be regarded invalid as to all the parties, in all respects and for every purpose, still it is apparent that the services for which claim is made were not rendered in reliance upon the personal credit of the husband. The presumption that the credit of the husband was the basis of the services is rebutted by all the circumstances; such as the absence and permanent non-residence of the husband, the agreed and actual separation from the wife, the possession by her, under a contract fully executed by him, of means provided by him for her continuous support and maintenance and sufficient for that purpose, and the perfect knowledge by Mrs. Alger of all these facts.
Of course there could be no contract, express or implied, by which the wife could be personally bound; for, although by consent living apart from her husband, she remained subject to the disabilities of coverture. She could contract no debt for which she could be personally liable, either at law or in equity.
*60 There could be no personal judgment or personal decree against her on such debt.
From what has been said, it is obvious that if the decree of the circuit court in behalf of the appellees, Alger and wife, for the amount allowed for services, can be sustained at all, it must be on the ground that the fund subjected to the decree was the separate-estate of Mrs. Harshberger, charged by her in her lifetime- with the payment for these- services. • ■ •
This fund is the remnant of what was settled by Samuel Harshberger to the use of his wife under the dee'd of separation, and it may be conceded, for the purposes of this suit, that the deed, to the extent of the provision therein made by the husband for the wife, was a valid instrument.
I do not deem it necessary in this case to enter at large upon the discussion of the general question of the validity of deeds of voluntary separation between husband and wife. The books abound.in discussion of this question by judges and law-writers, and the weight of authority would seem to be, that while courts will give no countenance or aid to either party in carrying into execution an independent executory agreement to live apart, because such an agreement is considered as against public policy, yet they ■ will generally uphold and enforce against the husband such conveyances and covenants as he may have made for the maintenance of his wife, provided the separation has actually taken place, or is contemplated as immediate, and the provision for the wife is made through the intervention of a trustee, and the parties have not subsequently come together again. Notes to Stapilton v. Stapilton, 2 Lead. Cas. Eq. (4th Amer. Ed.) Part 2, top pages 1675, 1696 to 1702 inclusive; 2 Bright’s Husband and Wife, 307; 2 Story’s Eq. Juris. § 1418; 1 Bishop on Marriage and Divorce, (5th Ed.) *61 ch. 37, § 630 to § 656 inclusive, and the numerous authorities cited by these authors; Walker v. Walker, 9 Wall. U. S. R. 744, and cases there cited.
The case of Switzer v. Switzer, 26 Gratt. 574, is the only case, as far as I know, ever before this court, in which the validity of a deed of separation was drawn in question. In that case, the court set aside the deed, on a bill filed by the wife, but expressly waived the decision of the general question as to whether any deed of separation was valid to any extent or for any purpose.
The question need not be decided now. I only state what seems to be the weight of authority; and as a eoncessum. to the appellees, let it be that the deed is valid to the extent before indicated. This conceded, it is quite plain that the estate acquired by the wife under the deed is a separate estate. It is not so declared in express terms. That may not be necessary; no particular phraseology is necessary to create such an estate. As in all instruments to be construed, the controlling test is the intent of the parties. Prout v. Roby, 15 Wall. U. S. R. 471, 474; Bank of Greensboro v. Chambers & als. 2 Va. Law Journal, 469. The conveyance and assignment were by the husband for the wife’s “ express use, support and maintenance,” and the deed contains a covenant of indemnity to the husband against the wife’s debts. Such a deed necessarily excludes the husband’s marital rights, and of itself imports a separate estate of the wife in the property set apart to her use; otherwise it would be ineffectual for the purposes manifestly contemplated. Leake, trustee, v. Benson & als. 29 Gratt. 153, 156; Steel $ als. v. Steel & als. 1 Ired. Eq. R. 452, 455; 1 Bishop on Law of Married Women, § 838, citing Gaines' adm’x v. Poor, 3 Metc. Ky. R. 503. In that case the words were “ in trust for Mrs. Gaines.” Bullitt, J., is reported *62 as saying: “ In the case before us, though the eontoact does not employ any of the usual technical to create a separate use, yet as it shows that a separation was intended between Gaines and his wife, and uhe property was conveyed to Poor; in trust for her, in view of such separation, it is clear a separate use was intended.”
^ uiay f’ther conceded that Mrs. Plarshberger had the power to charge this separate estate with the payment of any debt she might create, restrained perhaps from anticipating any instalments of the money secured to her use before they became due, and that when the services were rendered for which a claim is asserted, the amount subject to be charged exceeded the estimated value of the services.
And it may be further conceded that if Mrs. Harshberger contracted any debt or liability to her daughter, Mrs. Alger, for services rendered, such debt or liability was a charge on the separate estate.
The liability of a married woman’s separate estate for her engagements depends upon her intention to charge it. Her intention to charge the estate must be made to appear. It may sometimes be- implied. For example, if she execute a bond or note, Whether-as principal or surety, she must be presumed to have intended a charge on her estate, since in no other way can the instrument be made effectual. Burnett & wife v. Hawpe’s ex’or, 25 Gratt. 481; Darnall & wife v. Smith’s adm’r & als. 26 Gratt. 878.
If the husband and wife are living together, and the'wife, having a separate estate, purchase goods for herself or her family, or contract for services, it is not necessarily implied that she intends a charge upon her . estate. It is rather to be inferred, in the absence of proof, direct or circumstantial, to the contrary, that in 'making the purchase or contracting for the services, *63 credit' was given to the husband, and that she was acting as his agent. If, however, she is living apart from her husband, with a separate estate, and daily if, under articles of separation, it has been stipulated that the husband is not to be bound for her debts, it must be inferred, I admit, that she intended to charge her own estate.
In Johnson v. Cummins, 1 C. E. Green’s Id. 97, the chancellor said : “ The general principle is that a married woman is enabled in equity to- contract debts in regard to the separate estate, and the estate will be subject in equity to the payment of such debts. In order to bind the separate estate it must appear that the engagement was made in reference to and upon the faith and credit of the estate. But where a married woman, living apart from her husband and having a separate estate, contracts debts, the court will impute to her the intention of dealing with her separate estate, unless the contrary is shown.” Notes to Hulme v. Tenant, 1 Lead. Cas. Eq. (4th Amer. Ed.) Pt. 2, top p. 679, 760.
With the concessions already made, that the deed of separation, to the extent of the estate settled to the use of the wife was valid, that the estate thus created was the separate estate of the wife, that she had the power to charge it with her debts to the extent indicated, and that if she contracted any debt or liability to her daughter for services, she must be presumed to have intended such debt or liability as a charge on her estate, the case is narrowed down to the single question, Bid she ever contract any such debt or liability ? I am free to say that I do not think she ever did.
Soon after the separation of Harshherger and his wife, as before stated, he left the state and never returned. All of the daughters, except Mrs. Alger, left soon after the termination of the war. Mrs. Alger *64 remained, and also a grand-daughter of Mrs. Harshberger. They all lived together, whether in the house of the old lady, or in Mrs. Alger’s house, does not distinctly appear. For about two months before her death, Mrs. Harshherger was confined to her bed by sickness and was helpless, and for some ten or eleven months immediately preceding, she could not rise from her bed without assistance, but when assisted she could get up and walk about the house. Before that time,' it seems, she went about and did light household work. Her daughter and grand-daughter, the latter being some seventeen or eighteen years old when her grand-mother died, waited upon and nursed her while sick; and during the period of her sickness and before that time, the two attended mostly to the household work, the daughter taking the chief management and also directing the farming and out-door business. Some of the witnesses speak of her chopping firewood, hut Mrs. Blosser, who had the best opportunity of knowing, says “ that they had people hired to chop wood.” Supplies were derived in common from the land of Mrs. Harshherger and the land owned by her daughters, these lands being, it would seem, sometimes kept and cultivated, and at other times rented out.
The commissioner allowed Mrs. Alger for h'er services $4 per week for the last year of her mother’s life, $1 per week for the year next previous, and 75 cents per week for the three preceding years, with interest on the several annual sums from the end of each year, making in the aggregate $550.41 as of the 19th November, 1877.
Although these charges run through the last five years of Mrs. Harshberger’s life, she was never heard once to allude to any agreement or understanding of any sort looking to compensation being made for these *65 services. Had it been contemplated that the services should be paid for, some arrangement, no doubt, to that end would have been entered into, and would most probably have been spoken of. It might be reasonably expected that there would have been some writing between the parties showing the contract, or at least some verbal agreement made or acknowledged in the presence of witnesses; or, as the old lady had the power under the deed to dispose of the residuum of her property by will, she might have bequeathed it or a part of it to her daughter. Xor did Mrs. Alger ever assert any claim for these services during the lifetime of her mother, or, so far as appears, ever mention the subject to her mother ; nor did she ever assert any such claim against her mother’s personal representative, who qualified some three years after her mother’s death, and proceeded to collect what was due to the estate ; nor did she assert a claim against any one until after the death of her father in the year 1875, and the qualification of an administrator of his estate in the year 1876, after which she and her husband filed their bill in this case against that administrator, seeking a distribution of the estate and payment for the services aforesaid.
Thus, it seems to me, there is not only no express contract' for the services proved, but no contract can be justly implied. The evidence rebuts the presumption of any contract. The services were just such as any child, prompted by filial affection and impelled by a sense of duty, might be expected, under the circumstances, to render cheerfully and gratuitously to an aged mother; and I am of opinion that the services in this case proceeded from these praiseworthy mo- ' tives, and from no expectation, at the time they were rendered, either on the part of the mother or daugh *66 ter, that they wére to be paid for. As said by a Pennsylvania judge -in a like case, “ they were the results of the • relation, not the fruits of a contract.” Agnew, J., in Leidig v. Coover's ex'ors, 47 Penn. St. R. 534.
As between parent and child (adult), the common law imposes no obligation upon either to support the other, not even to furnish necessaries in the strictest sense of that term; but there is a high moral duty on each to render the other all needful assistance. In England and in some of the American states there are' statutes enforcing that duty. 2 Kent’s Com. 207, 208 (side pages). We have no such statute in Virginia.
Whenever, therefore, compensation is claimed in any case by either against the other for services rendered, or the like, it must be determined from the particular circumstances of that case whether the claim should be allowed or not. There can be no fixed rule governing all cases alike. In the absence of direct proof of any express contract, the question always is, Can it be reasonably inferred that pecuniary compensation was in the view of the ■ parties at the time the services were rendered? and the solution of that question depends on a consideration of all the circumstances of the case, the relation of the parties being one of these circumstances.
In Williams v. Stonestreet, 3 Rand. 559, a charge by a son-in-law for nursing his father-in-law in his last illness was rejected, Judge Cabell delivering the opinion of the court, saying, “ that there was no contract, express or implied; and considering the relation between the parties, the services were such that no-compensation ought to have been expected.”- See 2 Parsons on Contracts (5th Ed.) 46; Schowler on Domestic Relations, 372; Bump. on Fraudulent Conveyances, 257; and the *67 •numerous authorities cited by these authors on the doctrine of presumption in cases like the present.
If there had been a contract for compensation in this case, it is difficult to perceive how the bar of the act of limitations, relied on by the administrator, could be avoided. In demands strictly legal, of which .equity has jurisdiction concurrent with the law courts, equity follows the law literálly in applying the' statute of limitations, acting according to what’ would seem to be the better opinion, in obedience to the requirements' of the statute; while in cases of claims of an equitablé nature, it acts by analogy; that is, it applies the same bar to such claims that would be applied at law, under the statute, to legal claims of analogous character. To some eases this rule has no application. If is never appMed to controversies between trustee and cestui que trust in cases of subsisting technical trusts cognizable only in courts of equity; and in cases of concealed fraud or mistake, the act is not allowed to run except from the discovery of the fraud or mistake. Rowe v. Bentley & als., 29 Gratt. 756, 759, et seq., and cases there cited.
If Mrs. Alger had any valid claim, it accrued in the . lifetime of her mother, was a claim against her mother’s separate estate, and was therefore -an equitable demand. It could have been enforced only in a court of equity. A legal claim of like character must have been asserted within five years from the time fight of action accrued thereon. The running of-the statute, commencing in the lifetime of Mrs. Ilarshberger, would not have been suspended by her death, or because of the lapse of time before there was an administrator of her estate. 1 Rob. Prac. (New Ed.) 591, and cases there cited. And so, on principle,-Of the equitable demand against her estate.
Upon the death of Mrs. Ilarshberger, her estate was *68 devolved by operation of law on her administrator, whose duty it was to administer it, and after the payment of funeral' expenses, charges of administration, and all debts against the estate, to pay over the surplus to her surviving husband, who was her sole distributee under the law, (Code of 1873, ch. 119, § 10), or after his death, to his administrator. The administrator of Mi’s. Harshberger, therefore, should have been made a party to this suit; but inasmuch as it appears that pending the suit he had his accounts as administrator stated and settled by a commissioner of the court, and he then paid over the balance in his hands to the administrator of the husband, which balance was thus brought under the control of the court in the cause, and this proceeding seems to have been acquiesced in by the parties, hi! presence as' a party was, perhaps, not indispensable.
In any view I can take of this case, I am of opinion that the decree of the circuit court is erroneous and should be reversed; that the exceptions of the appellants to the report of the commisiouer allowing the claim of the appellees, Alger and wife, for the services of Mrs. Alger should be sustained, and that the cause should be remanded to the circuit court for further proceedings to be had therein, in order to a final decree in conformity with the views herein expressed.
The other judges concurred in the opinion of Burks, J.
The decree was as follows:
This cause, which is pending in this court at its place of session at Staunton, having been fully argued but not determined at said place of session, this day came here again the parties by their counsel, and the *69 court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said circuit court erred in its said decree in overruling the exceptions filed to the report of commissioner Bryan by the defendants’ counsel and in confirming said report, and consequently further erred in its said decree in ordering payments to he made by the administrator of Samuel Harshberger based on said report as confirmed. The said circuit court should have sustained the said exceptions to said report, and have wholly disallowed and rejected the claim for services preferred by the complainants, Abraham Alger and Elizabeth, his wife, and have caused said report to be reformed so as to make it conform to the action of the court disallowing and rejecting said claim, and as reformed should have confirmed it, and proceeded to decree thereon as thus reformed and confirmed according to the rights of the parties respectively. It is therefore decreed and ordered, that the said decree be reversed and.annulled, and that the appellees, Abraham Alger and Elizabeth, his wife, pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here; and the cause is remanded to, the said circuit court for further proceedings to be had therein to a final decree in conformity with the opinion and principles herein expressed and declared; which is ordered to be certified to the said circuit court of Rockingham county.
Decree reversed.