RICE v. FEDERAL LIFE INS. CO et al.

No. 25132.    May 21, 1935.

Geo. E. Rider, for plaintiff in error.

Howard T. Tumilty and Reuel W. Little, for defendants in error.

PHELPS, J.  This appeal deals with the subject of priority of mortgages, the particular question being whether the mortgage lien of the Federal Life Insurance Company (the plaintiff below, defendant in error here) is superior to that of H. M. Rice, deceased, represented in this action by Rhoenna Rice, administratrix and his sole heir.

On July 5, 1917, F. B. Herron, Sr., owning land in Marshall county, mortgaged it to the Federal Life Insurance Company. The note, with the mortgage securing it, was to become due on December 1, 1926.

On October 15, 1922, he conveyed it by deed to his son Frank B. Herron, Jr., who thereby assumed the mortgage indebtedness as a part of the consideration.

On December 5, 1923, the foregoing mortgage and deed being of record, Herron, Jr., executed his note and mortgage on the same land to Rice, plaintiff in error's intestate.

In June of 1926, the property was conveyed by Herron, Jr., to Will Willis, and then by Willis to Edd Long. Both Willis and Long, in turn and as part of the con-sideration, assumed the indebtedness evidenced by the two mortgages; hence, for the purposes of this appeal, we may eliminate Willis.

On December 1, 1926, the due date of the note and mortgage to the insurance company, that company and Edd Long (who had become the owner and had assumed liability for both mortgages) entered into an extension agreement wherein the due date of the insurance company's note and mortgage was conditionally postponed to December 1, 1931, the condition being that Long would pay certain interest coupons.  At least one of these interest coupons had become due and delinquent under the terms of the original mortgage, and not any of the principal had been paid.  In said extension agreement the original mortgage was expressly made a part thereof, and it was provided that in the event Long should fail to pay the interest coupon notes or should fail to pay the taxes, the insurance company reserved the right to declare the extension agreement null and void and to proceed under the terms of the mortgage to collect said indebtedness.  The extension agreement did not purport to be a satisfaction of the mortgage.  Neither the original mortgagor nor any subsequent grantee except Long was a party to the extension agreement.

Edd Long defaulted in payment of portions of the interest coupons and failed to pay any of the taxes, totaling $576, and the insurance company paid said taxes. After the running of the extension agreement the insurance company filed its mortgage foreclosure action against Edd Long, and naming the second mortgagee, H. M. Rice, or his administratrix, as a party defendant.

Rice's administratrix (hereinafter designated Rice) filed answer and cross-petition in which there were set forth the same facts and claims as are now before us, namely, that when the plaintiff insurance company made the extension agreement with Long it thereby released and surrendered the personal liability of the original mortgagor, Herron, Sr.; that the extension agreement had the effect of a novation, and that therefore the Rice mortgage became superior to the plaintiff's mortgage.

The trial court rendered judgment absolving the senior Herron from personal liability, but adjudging the plaintiff's mortgage lien superior in point of priority to that of Rice's mortgage.

The particular question, then, before us

is: When a mortgagor conveys the land to a grantee who thereby assumes the mortgage indebtedness, and who then executes a second mortgage, after which he conveys the land to a second grantee, who assumes the indebtedness evidenced by both mortgages, and thereafter the first mortgagee grants an extension to the new owner, without the knowledge and consent of the original mortgagor, is the lien created by the second mortgage thereby advanced to priority over that of the first mortgage?

Approaching the solution of this question, in logically successive stages, it is first proper to observe that in cases where the extension is granted to the original mortgagor, it does not change the date of the original lien, which retains its priority over subsequent purchasers and incumbrancers. The mortgage does not secure the note, which is merely an evidence of the debt, but secures the debt itself. A mortgage secures a debt or obligation, and not the evidence of it (the note), and no change in the form of the evidence, or in the mode or time of payment, can operate to discharge the mortgage. So long as the debt secured remains unpaid, neither the renewal nor substitution of the evidence of the debt will impair the lien of the mortgage. If, before the extension, a third party has obtained a judgment or mortgage lien against the premises, the extension does not have the effect of subordinating the original mortgage to the lien of such third party. Unger v. Shull, 154 Okla. 277, 7 P. (2d) 881; 2 Jones on Mortgages (8th Ed.) 659; 41 C. J. 582; 19 R. C. L. 452. An exhaustive discussion of this question is contained in 33 A. L. R. 149.

Now let us consider the situation created when the mortgagor conveys the land to a grantee who assumes the indebtedness: The relation thereby created between the grantor (mortgagor) and the grantee is that, as between the two, the grantee becomes the principal and the grantor his surety. But that status is only as between the two of them; unless the mortgagee so elects, he need not recognize it, he may look to the original mortgagor as being primarily liable. Or he may consider the grantor as the grantee's surety. He may proceed as for a personal judgment, or as against the land. There can be no change in the relationship between the mortgagor and the mortgagee, without the knowledge and consent of the mortgagee, which can affect the rights of

the mortgagee. Peters v. Lindley, 88 Okla. 32, 211 P. 409, 41 A. L. R. 315; Winans v. Hare, 46 Okla. 741, 148 P. 1052; Scott v. Norris, 62 Okla. 292, 162 P. 1085; Sawyer v. Bahnsen, 102 Okla. 41, 226 P. 344.

Thus we have seen that so long as the mortgagee remains inactive he may regard the original mortgagor as personally and primarily liable. But when the mortgagee recognizes the transaction and accepts it, especially by any acts evidencing an intention to hold the grantee personally liable, he thereby consents in law to the stepping down of the mortgagor from the status of principal to that of surety. And where the mortgagee grants an extension of time to the grantee, without the knowledge or consent of the grantor (original mortgagor), he thereby releases the mortgagor from personal liability. Sawyer v. Bahnsen, supra. To hold that the same act which, by operation of law, requires the mortgagee to relinquish holding the mortgagor as a principal and look upon him as a surety only, also releases him altogether because he is a surety, is a theoretical incongruity. But such nevertheless is the law and it is justified from a practical viewpoint. Thus when the trial court in this case refused to render personal judgment against the original mortgagor, it was sustained by the weight of authority.

But when the plaintiff insurance company released the personal liability of the original mortgagor, Herron, Sr., by operation of law, did said release thereby reach over and have the same effect on the lien itself, in so far as the second mortgage is concerned, thus deferring the date upon which the lien of the first mortgage took hold to the date of the extension agreement with Edd Long? The appellant, Rice, contends that it did, on the theory that there can be no mortgage without a debt which it secures. But such contention overlooks the fact that there was no cancellation of the first mortgagor's personal liability until long after Rice had taken his second mortgage, and further overlooks the well-settled rule of law that, in the language of Peters v. Lindley, supra, the first mortgagee may proceed "against the maker of the note by action at law, or he might proceed directly against the mortgaged property." A mortgagee may, if he chooses, look to the land alone as the primary fund for the payment of the debt. Harden v. American First National Bank, 154 Okla. 11, 6 P. (2d) 1060. If he may

do this, then it logically follows that he may surrender either remedy without losing the other.

The Minnesota Supreme Court in Minneapolis Investment Co. v. National Security Investment Co., 226 N. W. 189, 63 A. L. R. 1516, held that the first mortgagee, by releasing the first mortgagor from his personal obligation to pay the mortgage did not thereby subordinate its first mortgage to a second mortgage which was obtained from a subsequent purchaser of the premises. Commenting on that case the annotation in 63 A. L. R. 1520 has the following to say:

"The doctrine that, with knowledge as to a subsequent mortgagee whose equitable right of subrogation may not be diminished, a release by the prior mortgagee of the mortgagor's personal obligation to pay the debt may subordinate the prior mortgage to the subsequent one, while recognized as a correct equity principle where both mortgages have been executed by the same mortgagor, is held in the reported case (Minneapolis Invest. Co. v. National Secur. Invest. Co., ante 1516) inapplicable where the original mortgagors sold the property before the second mortgage was given, since in that case there was no obligation on their part to pay that mortgage, and if they had been compelled by reason of their personal obligation to pay the first mortgage debt, they would themselves have been entitled to be subrogated to the security of that mortgage, and the holder of the second mortgage would have no equity to urge against their doing so ahead of its mortgage. The court further suggests that an even stronger reason for not applying the doctrine would exist if, as was assumed but not proved, the grantee's deed contained a covenant that he would pay existing mortgages."

Why should we probe for theoretical reasons to give Rice, the second mortgagee, more than he bargained for? When he took his second mortgage, from two different sources he had notice of the first mortgage. The first mortgage was on record and in the deed under which his mortgagor took title there was contained the express assumption of the first mortgage debt. The legally automatic release of the senior Herron's personal liability in no wise changed the position of the second mortgagee; no consideration moved from him and it was with no reference to his benefit; it should not be made to redound to his benefit by the advancement of his mortgage to a priority over the lien of the former mortgage. Bormann v. Hatfield (Wash.) 164 P. 921; Geib v. Reynolds (Minn.) 28 N. W. 923. Rice gave nothing and did nothing which would render it any wrong to him to keep the first mortgage alive and superior. "A court of equity will keep an incumbrance alive, or consider it extinguished, as will best serve the purposes of justice." 19 R. C. L. 438. The same contention was made in the Kansas case of James v. Williams, 169 P. 1163, with facts somewhat analogous, in which it was stated:

"The plaintiff contends that the defendant, by canceling his note and releasing the makers from personal liability, no one else being obligated to pay the debt, forfeited his right to a lien. It is said there can be no mortgage without a debt which is secured, and there can be no debt without a debtor who is obligated to pay. * * * For the purpose of accomplishing an equitable result, a mortgage lien may be kept alive and enforced after the lien claimant has placed himself in a position which precludes him from resorting to the personal obligation of the mortgagor or any one else for satisfaction of the debt."

Strangely, it appears that this same set of circumstances has but once before been presented to any appellate court and that was in the Kansas case of French v. Poole, 111 P. 488. The facts and language in that case are so complicated that the point is best recited here by the court's own syllabus:

"An owner of real estate executed a promissory note and secured it by a mortgage upon the land; such mortgage being a first lien thereon. He subsequently sold the mortgaged premises to a purchaser, who, as part consideration for the conveyance, assumed and agreed to pay all the incumbrance thereon. The then owner of the land and the holder of the aforesaid note and mortgage agreed that the time of payment should be extended and a new note and mortgage be executed by the then owner of the mortgaged premises, payable at the time as extended, and such new note and mortgage should be substituted for those then held by the mortgagee, and that the priority of liens should not be changed or in any way affected thereby. Held, that such transaction was valid and binding not only between the parties, but also upon the holders of subsequent liens."

The doctrine of relation back, which appellant impliedly seeks to invoke, is never used except for the promotion of justice or the prevention of injustice. To apply it in this case would violate that rule.

The judgment is affirmed.

McNEILL, C. J., and BAYLESS, BUSBY, and GIBSON, JJ., concur.