FARMERS & MERCHANTS STATE BANK and others, Respondents, vs. HILDEBRANDT, Appellant.

*April 2—April 28, 1936.*

For the appellant there were briefs by *Evans & Flom* and *M. W. Sweet,* all of Madison, and oral argument by *Mr. Sweet* and *Mr. Fred M. Evans.*

For the respondents there was a brief by *Hall, Baker & Hall,* and oral argument by *Paul W. Griffith* and *Laurence W. Hall,* all of Madison.

FOWLER, J. Appellant contends that when the bank agreed with Emil Hildebrandt to extend the time of payment of the debt secured by the first mortgage, the lien of the first mortgage was thereby rendered inferior to the lien of the second. He cites no cases so holding, but claims this results from application of general principles of suretyship, subrogation, and marshaling of securities. He relies on the principle stated by this court in *Fanning v. Murphy,* 126 Wis. 538, 105 N. W. 1056, that when an owner of land on which he has executed a mortgage conveys it to a grantee, who as part of the consideration for the conveyance agrees to pay the mortgage debt, the grantee becomes the person primarily liable for payment of the mortgage debt and the mortgagor becomes his surety for its payment. Under that rule Emil Hildebrandt became primarily liable for the first mortgage debt and the original mortgagor became his surety for its payment. Appellant's counsel argues from this and from the rule of law that extension to the principal of the time to pay his debt releases his surety, the lien of the second mortgage became superior to the lien of the first.

The conclusion that from the two rules above stated the priority of the liens is reversed seems to be based upon a statement of this court in the opinion in *Sexton v. Pickett,* 24 Wis. 346, 349, to the effect that the rule of *Coyle v. Davis,* 20 Wis. *564, "where it was held that a mortgagee, by diminishing the security of a subsequent purchaser of part of the premises, by releasing the mortgagor's personal liability, discharged the lien of the mortgage so far as the rights of such subsequent purchaser were concerned . . . *might in some cases* merely give the second mortgagee priority over the first."

It appears from the opinion in the *Sexton Case* that James Austin, the owner of land, mortgaged it to Mrs. Pickett and afterwards conveyed it to Geo. W. Austin. Geo. W. Austin

mortgaged to Sexton. Pickett released both Austins from personal liability. Sexton claimed that by the release Pickett made his (Sexton's) mortgage a first lien. The trial court held that under *Coyle v. Davis, supra,* Sexton, as second mortgagee, had the right to redeem the land from the Pickett mortgage, and thereby became subrogated to all of Pickett's rights, including the right of personal judgment against the Austins; that by the release of the Austins, Sexton's security was diminished, without his consent, and that as against Sexton, the first mortgage was discharged. This court on appeal in modifying the judgment stated that the rule of the *Coyle Case* would apply to cases of mortgagees of lands subject to a first mortgage as well as to purchasers of them, and that the rule of that case *"might in some cases* merely give the second mortgagee priority over the first" instead of discharging them. If it be conceded that the facts of the *Sexton Case* as above stated "might in some cases" give the second mortgage priority over the first, it does not follow that the second mortgage in the instant case has been so made. The release of the Austins from personal liability was by express contract. The intent to release them was express. Here the release by extension of time, if it operated as a release, resulted from operation of law, and without any express intent of the first mortgagee to release the first mortgagor or his immediate grantee who had agreed to pay the mortgage debt. In *Hajek v. Pojar,* 126 Neb. 386, 253 N. W. 354, and *Rice v. Federal Life Ins. Co.* 172 Okla. 358, 45 Pac. (2d) 49, 52, it is held that an extension of time of payment of a first mortgage debt by the mortgagee does not render the lien of that mortgage subject to the lien of a second mortgage in absence of intent on the part of the parties to the extension agreement to make it so. In the latter case it was held that an agreement made without the knowledge of the mortgagor between the mortgagee and a grantee of the

mortgagor who had assumed the mortgage debt to extend the time of payment of the debt, while it releases the mortgagor from personal liability, does not subjugate the lien of the mortgage to that of a mortgage second thereto. As pointed out in the latter case, the release of the first mortgagor from personal liability by operation of law does not postpone the date on which the lien of the first mortgage took effect. As long as the debt which a mortgage secures remains unpaid, the extension of the time of its payment, either by extension agreement or the execution of a new note, does not subordinate the lien of the mortgage to that of subsequent liens that attached by judgment or second mortgage prior to the extension of the time of payment of the debt. *First National Bank v. Citizens' State Bank,* 11 Wyo. 32, 70 Pac. 726; *Farmers' Bank v. Mutual Assurance Soc.* 31 Va. (4 Leigh) 69; *Willett v. Johnson,* 84 Ky. 411, 1 S. W. 674; *Owings v. McKenzie,* 133 Mo. 323, 33 S. W. 802; 2 Jones, Mortgages (8th ed.), p. 659. The release of the original mortgagor and of his grantee (Emil Hildebrandt's grantor) in the instant case, by extension of the time of payment of the mortgage debt, only had the effect of releasing the right of action the mortgagee otherwise would have had against them in a suit on the note. But the mortgagee had two distinct remedies to collect the mortgage debt. He might sue the mortgagor and his grantee at law, or he might foreclose his mortgage either with or without demanding judgment for a deficiency judgment against them. *Cavadini v. Larson,* 211 Wis. 200, 248 N. W. 209. The effect of such release as there was was only to destroy his right of action for a personal judgment, by separate suit or for deficiency in the foreclosure suit. He still retained his right by foreclosure to subject the mortgaged land to payment of the debt. As stated in the *Rice Case, supra,* the extension was made without reference to the second mortgagee. His position as lien holder was not changed by it. No consideration moved from him, no benefit to him was intended, and he should not reap any

benefit from it. The opinion of the *Rice Case* closes with these words:

"The doctrine of relation back [subrogation], which appellant impliedly seeks to invoke, is never used except for the promotion of justice or the prevention of injustice. To apply it in this case would violate that rule."

This applies to the instant case.

There is perhaps no need to review here the correctness of the statement quoted from the *Sexton Case*, because of the difference between the factual situations of that case and this. As already stated, in that case the release of personal liability was express and actually intended. Here such release as there was occurred through operation of law. This, under the rule of the *Hajek* and *Rice Cases, supra,* is enough to render the statement there quoted inapplicable here.

But facts other than those appearing in the opinion or the statement preceding it in the *Sexton Case* controlled the disposition of that case that was made. Mrs. Pickett owned certain land. She conveyed it to James Austin through an attorney in fact under a power of attorney authorizing him to convey her lands and act for her in all matters connected therewith and connected with mortgages. James Austin executed a purchase-money mortgage running to Pickett. James Austin conveyed to Geo. W. Austin, who assumed payment of the Pickett mortgage. Geo. W. Austin mortgaged to Sexton who was foreclosing his mortgage. The Pickett's attorney in fact executed to the Austins a release of their personal liability upon the mortgage debt, in consideration of their surrendering possession of the premises and releasing all claims thereto. The attorney in fact of Mrs. Pickett afterwards conveyed the premises to Favill. There were tax deed claimants to the land. The trial judge by his findings directed entry of judgment of foreclosure of Sexton's mortgage and devotion of the proceeds of sale first toward payment of his mortgage debt with provision that the rights of

the tax deed claimants be determined by future litigation, and that the sale be made subject to their claims. The judgment did not contain the provision protecting the rights of the tax deed claimants, and this court modified the judgment to include the provision therefor contained in the findings. All these facts not appearing from the opinion of the court appear from the printed case, which is a part of its files. In this situation we cannot regard the statement quoted from the opinion in the *Sexton Case* as ruling or at all applicable to the instant case. The statement merely is that "in some cases" principles of subrogation "might" superimpose the lien of a second mortgage over that of a first mortgage. But principles of subrogation, on which the opinion of this court states the trial court based its judgment, did not produce that result in that case and do not produce it in this. The fact in the *Sexton Case* that made the plaintiff's mortgage a first lien on the land was the surrender of the premises to Pickett by the owner of the land and the release by him of all claim thereto. This was plainly not only a satisfaction of the debt by the only persons liable therefor, but a discharge of the mortgage. Sexton was therefore entitled on foreclosure of his mortgage to have the proceeds of the sale devoted first to payment of his mortgage debt as the judgment directed. The surplus over the amount of the second mortgage debt, if any, was directed to be paid into court. There was no adjudication as to who was entitled to the surplus, if any. This court did not state, to say nothing of ruling, that the lien of the second mortgage was superimposed over that of the first mortgage. There was no superimposition. There was a discharge of the first mortgage, which left the second entitled to have the proceeds of sale first applied to payment of his debt as the trial court adjudged, and which judgment in that respect this court affirmed.

We note that the statement in the opinion in the *Sexton Case* was assumed to be as stated in the syllabus and the law there stated was assumed to be correct by the supreme court

of Minnesota in *Minneapolis Inv. Co. v. National Security Inv. Co.* 178 Minn. 50, 226 N. W. 189. Both assumptions were incorrect. We note also that that court did not apply the law as there stated to the case before it because the mortgagors of the two mortgages involved in the case before it were different persons, as is the case here. The Minnesota opinion states the same person executed the two mortgages in the *Sexton Case,* and gives the fact that the two mortgagors in the case before it were different persons, as its excuse for not following the law of that case as it states it. However, the two mortgages in the *Sexton Case* were executed by different persons, just as in the case before it and as here. The suit before the Minnesota court was for foreclosure of a second mortgage. The second mortgagors had conveyed the premises and their grantee had executed a third mortgage. This third mortgagee was in the same relative position as the second mortgagee here, and was making the same claim. The reasoning of the Minnesota court is that had the second mortgagors been obligated and compelled to pay the second mortgage debt by reason of their personal liability, they would have been subrogated to the second mortgagee's security and the third mortgagee would have had no equity to urge against their subjecting the premises to the second mortgage debt ahead of his third mortgage. Therefore the release of the second mortgagor did not diminish. the third mortgagee's security. The opinion further states that had the second mortgagor's grantees assumed to pay the second mortgage debt, the conclusion of the court would have been more clearly justified, for the reason that in such case the grantee could not complain of the release because he had agreed to pay the second mortgage debt, and the third mortgagee had no better equities as against the second mortgagee or the second mortgagor than his own mortgagor had. The latter reason as well as the first upon which the decision of the Minnesota court went applies here, as the second mortgagor has assumed the first mortgage debt.

Appellant's counsel also appeals to the doctrine of marshaling securities in support of his contention that the second mortgagee became a surety for payment of the first mortgage debt. This doctrine applies in a variety of situations where two creditors have security on property of a common debtor and one of them releases his security on the property or a part of it. But there is here no room for application of that doctrine. While the holders of the two mortgages have security on the property of Emil Hildebrandt, the first mortgagee, by extension of the date of the first mortgage debt, did not release his security on that property or any part of it.

The only semblance of reason that we can perceive toward support of appellant's contention is that if the extension agreement between Emil Hildebrandt and the first mortgagee had the effect of delaying the payment of the mortgage debt by the second mortgagee, it would, if he wished and was able to pay it and was denied the right to do so, increase the amount of the debt by the accumulation of interest and taxes during the period of extension, and perhaps put him to disadvantage by delays through changes in the foreclosure practice enacted by the legislature after the extension agreement was made. But if the second mortgagee was not deprived of any right by the extension of the debt, he ought not to be permitted to gain any advantage by it. It does not appear that he was prevented by the extension agreement from exercising any right that he had prior to its execution. Prior to its execution, he had the right to pay the first mortgage debt in order to protect the security of his second mortgage. It does not appear that he offered to make such payment, that he was able to make it, or that he desired to make it. It therefore does not appear that he was prevented from making payment by the extension agreement, or that he was in any manner whatsoever prejudiced by that agreement. Where no prejudice results no advantage should be given. The doctrines of subrogation and marshaling securities are

equitable doctrines. They are applied to promote equity, and will not be applied to work inequity. They are applied to prevent prejudice to rights, not to create advantage. To entitle appellant in equity and good conscience to any relief whatever in the instant suit he should have tendered to plaintiff the amount of its mortgage debt at the original rate of interest. Had he done so, his tender would doubtless have been ·immediately and gladly accepted. Had it not been, he should have tendered the amount with his answer. Had he done this, he could have had foreclosure of his second mortgage, or by subrogation have had all the rights that existed in the first mortgagee prior to the making of the extension agreement. If the extension agreement prevented him from exercising any rights of the first mortgagee, proof of desire and ability to pay the first mortgage debt would doubtless have entitled him, on paying to the plaintiff the first mortgage debt, to deduction of whatever sum, if any, he could have secured by the enforcement of that right, had the plaintiff not deprived him of the enforcement of it. If the parties discharged by operation of law were insolvent, he would have received no deduction. If they or either of them were solvent and able to respond to the full extent of the first mortgage debt and the statute of limitations had not barred claims against them, he would be entitled to have the full amount of the debt set off as against him and the first mortgage lien subordinated to his own. This would seem to be all. that principles of equity, stretched to. their extreme limit, could have awarded him, had he put himself in a position to invoke the doctrine of subrogation.

*By the Court.*—The judgment of the circuit court is affirmed.

The following opinion was filed June 29, 1936:

WICKHEM, J. (*concurring*). Defendant's position appears to be that as second mortgagee he occupies the position

of a surety because under certain circumstances he is entitled to subrogation. The question whether a second mortgagee is in any sense a surety would probably not be a profitable one to discuss, for the reason that it is largely a matter of terminology. A second mortgagee is one who has loaned money upon an already incumbered security. In the sense that if the security is inadequate, he may lose some portion of his debt by reason of the failure to liquidate the security at a sufficient price to pay it, his interest in the property and the fact that he sustains this risk may perhaps justify reference to him as a sort of surety. His rights, however, have never been considered to be those of a surety, nor has he in fact ever pledged his credit or property for the debt of another in such a way as to bring him within the conventional concept of a surety. The difficulty of treating him as a surety in any real sense is illustrated by the fact that defendant's only claim is that by reason of an extension of time, the lien of the first mortgagee should lose its priority. There is no contention that defendant is discharged. There is nothing to discharge him from. Nor does the fact that under certain circumstances he has certain rights by subrogation make him a surety. The doctrine of subrogation is much broader than the doctrine of suretyship, and existence of that right does not inevitably disclose a relationship of principal and surety. In *Reddington v. Franey,* 131 Wis. 518, 111 N. W. 725, the court said:

"The doctrine of subrogation, by means of which a debt once paid or a security discharged is kept alive as against the principal debtor for the benefit of a third person who, not being a mere volunteer, has paid the debt, is an equitable doctrine, favored by the law because it accomplishes the ends of justice and fair dealing. It is well settled that one who is legally bound to pay the debt or who has an interest to protect thereby is not a volunteer. It is also held without substantial conflict of opinion that where a fund is misappropriated by an agent or trustee without the owner's consent to

the payment of the debt of another, the owner of the fund is not a volunteer, but will be entitled to subrogation if necessary for his due protection."

The cases have not accorded the second mortgagee the rights of a surety. For example, the release of a first mortgage coupled with a simultaneous execution of a new first mortgage does not release the first mortgage as against the second mortgagee, or subordinate the first mortgage to that of the second, in the absence of some supervening equity. 33 A. L. R. 149; *Conner v. Welch,* 51 Wis. 431, 8 N. W. 260; *Kellogg Brothers Lumber Co. v. Mularkey,* 214 Wis. 537, 252 N. W. 596. Nor does modification of the contract between mortgagor and senior mortgagee have this effect. *Zastrow v. Knight,* 56 S. D. 554, 229 N. W. 925, 72 A. L. R. 389. Defendant must establish some right other than those belonging to a surety in order to make good his claim to priority.

The first right of the junior mortgagee is to redeem at any time after the maturity of the prior mortgage. Jones, Mortgages, p. 834, § 1363. This is stated by the authorities to be a common-law right, and I can discover no evidence that it is in any sense founded upon the doctrine of subrogation. This right may be grounded in principle upon his interest in the property and the obvious propriety of permitting him to protect it. Whatever its source, however, no action on the part of the first mortgagee can take this right from the second mortgagee, and particularly it may not be impaired by a new agreement extending the time of payment or otherwise modifying or altering the original note and mortgage.

The next right of the second mortgagee is to be subrogated to all of the rights of the first mortgagee against the debtor if and when he pays the debt secured by the first mortgage. It may be claimed that, although the first mortgagee may not affect the right of the second mortgagee to re-

deem by a contract extending the time, he may by such a contract so impair his own rights against the mortgagor as to injure those which the second mortgagee will have by subrogation upon payment of the first mortgage. If the modifying contract is ineffective as against the second mortgagee, it is in my opinion ineffective for all purposes. To hold otherwise would be to permit virtual destruction of the second mortgagee's right to redeem and make it impossible for the second mortgagee so to exercise this right as effectively to protect his interest. The alterations being void as to him, he is entitled upon payment to be subrogated to the rights of the mortgagee upon the original contract. I think that defendant must fail for the reason that the extension of time was wholly void as to him and did not impair his right to redeem at maturity or his right to be subrogated to the rights of the first mortgagee upon payment. This appears to be established by, or a necessary conclusion from, the rule in the following cases: See *Burchard v. Frazer,* 23 Mich. 224; *Brown v. Hardcastle,* 63 Md. 484; *In re Hutchinson,* 12 Fed. Cas. p. 1082, No. 6,954; *Battle v. Jennings Naval Stores Co.* 74 Fla. 12, 75 So. 949; *Belloc v. Davis,* 38 Cal. 242.

It further appears to result from an application of sec. 74.695 (1), (2), Stats., which provides:

"(1) Any person having a lien on real estate against which realty there is a prior lien may pay any or all of the items mentioned in subsection (2), and the amount so paid shall be added to the payor's lien, bear interest from date of payment at the same rate as that borne when paid, or if no rate was provided for prior to such payment, at the legal rate of interest. All sums so paid shall be collected as a part of and in the same manner as is the lien by virtue of which said payments are made and be entitled to the same priority.

"(2) The items, any or all of which may be paid under subsection (1) are as follows:

"(a) Any past due or defaulted principal or interest of a prior lien.

"(b) Any interest or amortized instalment due under a prior lien.

"(c) Premiums and assessment on insurance policies necessary to protect the security of the lienor making such payments or of any prior lien and authorized under the terms of either such lien.

"(d) Taxes or special assessments due and unpaid on any realty covered by the lien with interest, penalties and costs.

"(e) Any portion of a prior lien.

"(f) Any charge for improvements or any other item authorized by statutes or by the terms of any prior lien."