WINDSOR COUNTY, FEBRUARY TERM, 1885.

[Continued from page 413, *ante.*]

MARY H. PETTIS *v.* LEVI B. DARLING AND
AUGUSTA W. BISHOP.

[In Chancery.]

*Mortgage. Prior mortgagee cannot stipulate for higher
rate of Interest, when. Junior Mortgage. Payment.
Married Woman.*

1. The parties to a prior mortgage cannot stipulate by an unrecorded agreement for a higher rate of interest so as to affect injuriously a junior mortgagee without notice, although the mortgage was executed, and the parties resided, in a State where the agreement governs the rate of interest, and although there was a clause in the mortgage for future advances during one year, the agreement having been made after the expiration of the limited time.
2. But in such case, an agreement to make the extra interest a part of the mortgage debt is valid between the parties to it.
3. The oratrix had received six acceptances of $150 each as payment of the mortgage debt. The mortgagor afterwards collected some of these, but instead of paying over the whole of the money he gave his note for $80; *Held*, on foreclosure, that the $80 should not be included in the mortgage debt.
4. Under a certain transaction the oratrix had received $254.09, of which the defendant's wife was the absolute owner. The oratrix, retaining it fourteen years, had agreed with the defendant to apply it on his mortgage debt, and his wife had never made claim to it. It was not clear but that the husband had reduced it to his possession; *Held*, that it should be applied on the mortgage.

PETITION to foreclose a mortgage. Heard on a master's report, December Term, 1884. TAFT, Chancellor, decreed a foreclosure, allowing the oratrix the note of $328, disallowing the note of $80, and allowing the defendant the $254.09.

*J. J. Wilson* and *W. M. Pingree*, for the defendants.

The $550 note was executed in Rhode Island, and the law of that State must govern as to the rate of interest; and we

say that the rate of interest specified in the note only governs till the maturity of note, and after that time the statute rate (six per cent) governs.    *Pearce* v. *Hennessy*, 10 R. I. 223; *Lanahan* v. *Ward*, 10 R. I. 299.

It does not appear where the agreement to pay eight per cent on back thereof was made; and the court will not allow over six per cent, unless it appears that such agreement was legal where made.

The mortgagor and first mortgagee could not of their own motion and without the consent of Mrs. Bishop increase her burden.

As well might they increase the principal as the interest. *St. Andrew's Church* v. *Tompkins*, 7 Johns. Ch. 14; 1 Hill. Mort. 319; 1 Jones Mort. 361.

*D. C. Denison & Son*, for the oratrix.

The note for $328 is the legitimate outgrowth of the notes above named.    It is for interest over six per cent on the two notes, is a contract in writing made in Rhode Island, and by the law of that State legitimate, and being from the old notes existed from the date of the mortgages.

Darling, by his agreement in said note, directed that the payments be applied on *this* note, since he therein admits it to be one of the mortgage notes and claims that the money should be applied on the mortgage notes.

If the note for $328 is not secured by the mortgage, then the report finds that Darling gave no "consent or direction" as to the application of the payments; this being so, the law will apply payments first on unsecured claims, afterwards on secured claims.    *Langdon* v. *Bowen*, 46 Vt. 515.

The owner of equity of redemption may bind himself and charge the land for increase of interest by an agreement in writing, but not otherwise.    34 Mich. 302; 61 Ga. 472.    The $254.09 is not an offset.    It was owned by the wife.    A suit to recover it must be in her name.    32 Vt. 27; 33 Vt. 215. *See* 55 Vt. 329; 33 Vt. 1.

VEAZEY, J. One question is as to how the note of $328, and the agreement to increase the rate of interest of the prior mortgage debt, shall be treated in ascertaining the amount due on the oratrix's mortgages as against the two defendants respectively.

On the 8th of March, 1872, Darling mortgaged certain described land, machinery, etc., situated in Weathersfield, Vermont, to the defendant, Augusta W. Bishop, to secure a note of $3,000. This mortgage was foreclosed, decree obtained, and Bishop's interest passed to Williams & Co. for a valuable consideration. When this mortgage was given the oratrix held two mortgages on the same premises; one executed by Darling to the oratrix dated February 11, 1871, to secure a note of $550; the other executed by him to other parties, dated September 14, 1866, and assigned by them to the oratrix, being given to secure a debt on which there was due at date of assignment the sum of $847.09. All these mortgages were executed in the State of Rhode Island, where the parties thereto resided. By the law of that State the rate of interest agreed upon between the parties is a legal rate; but in absence of other agreement the legal rate is six per cent *per annum*. The oratrix's said mortgage debts bore six per cent interest, there being no other agreement as to rate of interest. The condition of the mortgage dated February 11, 1871, was as follows : "That whereas I, the said Levi B. Darling, have executed my negotiable promissory note for the sum of $550, bearing even date herewith, and made payable to the said Mary H. Pettis or order, in one year from date, with interest till paid, and whereas I may become further indebted to said Mary H. Pettis or her assigns within one year from the date hereof by other promissory notes for other money that may be during said year loaned by said Mary H. Pettis or her assigns to said Levi B. Darling. Interest on the first of the above named notes to be paid semi-annually." "Now," &c.

This suit is brought against the mortgagor Darling and Mrs. Bishop to foreclose said two mortgages.

February 11, 1875, Darling agreed to pay interest on the note of $550, at the rate of eight per cent *per annum*, payable semi-annually from that date, and indorsed the agreement on the note. On the same day he gave the oratrix the note of $328, being "given for the extra interest above legal interest which would accrue on the two notes of $550 and $847.09 up to February 11, 1875." But this note was dated back to June 1, 1871, and was executed in Rhode Island. By the law of that State where the note was executed and payable, no place of payment being mentioned,—*Peck* v. *Hibbard*, 26 Vt. 698,—eight per cent interest would have been a legal rate. The note was given after the principal was due on the mortgage debts. It does not appear what induced Darling to give the notes or increase the rate of interest on the original debt. It is expressed as given for " value received," which is *prima facie* evidence of consideration. *Burnham* v. *Allen*, 1 Gray, 500. Under the Rhode Island statute a stipulated rate above six per cent continues only to the maturity of the note. After that six per cent becomes the rate. *Pearce* v. *Hennessy*, 10 R. I. 223. But if it be agreed that the increased rate is to continue after maturity and until the principal is paid the agreement prevails. *Lanahan* v. *Ward*, 10 R. I. 299. Darling's purpose and agreement was to have the note become a part of the mortgage debt or secured by the mortgage. We think that as between him and the oratrix this agreement was valid and binding. This, indeed, is not seriously questioned. The contention more especially is, that this note as against Mrs. Bishop should not be included under the oratrix's mortgages, because it was executed subsequent to the execution of the mortgage to Mrs. Bishop and was not executed within the year specified in the condition of the mortgage to the oratrix.

We think this position is well taken, as between Mrs. Bishop and the oratrix. When the former took her mortgage she had as good a right to rely upon the rate of

interest of the prior mortgage debts as being fixed and certain as upon the amount of the principal. There was no provision in the oratrix's mortgage to enlarge the mortgage debt either as to principal or interest except for one year; and no such agreement or expectation then existed. The note and the agreement to pay a higher rate of interest upon which it was based, was a new contract between Darling and the oratrix after the intervention of the Bishop mortgage. When and after she took her mortgage the burden of the prior mortgages, so far as she was concerned, was fixed and not variable at the caprice of the other parties thereto. In *St. Andrew's Church* v. *Tompkins*, 7 Johns. Ch. 14, it was held that a prior mortgagee is not allowed to enlarge his demand beyond what appears upon the record, in consequence of a separate agreement between him and the mortgagor, to the prejudice of a second mortgagee who had no notice or information, at the time he took his mortgage, of the agreement between the mortgagor and the first mortgagee, by which the latter claimed interest, when the bond and mortgage were on the face of them without interest. Chancellor KENT there said: "There is no sound reason why the plaintiffs should take their intermediate interest out of the mortgaged premises to the prejudice and probably at the expense of the defendants, any more than that they should enlarge the principal of the debt, in conformity to some private agreement between them and the mortgagor."

The statute of Rhode Island does not aid the oratrix although Mrs. Bishop was chargeable with notice of it, because it was only by force of the subsequent contract that the rate of interest was increased. The statute was notice only of the right to raise the rate as between the prior parties. They had fixed the burden upon the property and Mrs. Bishop had the right to take a mortgage on it in reliance upon that burden as the extent of the encumbrance. It has even been held that in case of a prior mortgage to

secure future advances a junior mortgagee may by requisite notice limit the amount of further advances on the security of the prior mortgage. Jones on Mortgages, secs. 368–9; *McDonald* v. *Colvin*, 16 Vt. 300. The oratrix took her mortgage with notice of the right to give a subsequent mortgage. Mrs. Bishop took her mortgage with notice of the oratrix's mortgage as it stood on the record. Equity requires that the parties should be held, as between themselves, to their contracts as made, and it would be inequitable to allow the situation to be changed by a subsequent contract to which Bishop never assented. Jones, section 361, states the rule as follows : "The parties to a mortgage cannot, as against subsequent parties in interest, stipulate by an unrecorded agreement for a higher rate of interest than that provided in the mortgage as recorded, nor can they by such means incorporate into the mortgage any additional indebtedness. A subsequent mortgagee or purchaser has the right to redeem, by paying the amount due according to its terms." *Gardner* v. *Emerson*, 40 Ill. 296.

There is no occasion to refer to Williams & Co., as they are not parties to the suit. Just how they stand related to the property does not appear further than the simple statement in the report that Mrs. Bishop's interest has passed to them.

The note of $80 dated September 7, 1876, should not be included in the sum due. The facts in brief are as follows : Darling gave to the oratrix to be applied on his debt six acceptances of $150 each, which the oratrix took as payment on the indebtedness. She afterwards put some of them into Darling's hands for collection and he collected the same, and when she called for the money he paid it to her except $80 for which he gave his note. This was not simply a change of mortgage securities. It was an independent transaction entered into after the acceptances had been received as payment on the mortgage debt. It was a loan of $80 on the personal credit of Darling.

We hold, that the $254.09 received by the oratrix in the sale of land, was applicable on the mortgage debt. It appears that the oratrix at one time held a mortgage on property of Darling and his wife in Providence, Rhode Island, which was sold in 1871 by the oratrix's direction and by virtue of her deed of mortgage. The proceeds were paid to her and were sufficient to pay said mortgage and left a balance which she agreed should be taken into account on a final settlement of their affairs, which were these mortgages; and she has continued to hold this money ever since. The land was in separate pieces, and that belonging to Darling alone was first sold, but, being insufficient to pay the mortgage debt, that of his wife was then sold, which more than paid the balance and left a surplus of $254.09 as of January 1, 1875. The master reports that by the law of Rhode Island the wife is the absolute owner and has full control of her separate property. Counsel for the oratrix claimed that Darling had no right or interest in this balance, and that the same should not be applied to reduce the mortgage debt. It further appeared that in 1871, Darling and his wife joined in a release to the oratrix and her husband, all parties living in Rhode Island, of all claim and damage arising or growing out of said mortgage and sales thereunder. Thereafter Darling frequently applied to the oratrix for a statement of the sales, claiming there was something his due therefrom, and the statement was finally made showing the balance in the oratrix's hands which she agreed to account for as above stated; and so far as appears Darling's wife has never, during this period of fourteen years, made any claim for the money, and does not make it in this case.

We think these facts show a well understood purpose and assent on her part to have this money accounted for by application on the oratrix's mortgage debt against Darling as the oratrix agreed in writing to account for it, whether barred by the Statute of Limitations or not. We see no rea-

son why she left this money in the oratrix's hands until the statute would bar all claim for it, so far as appears, unless she understood and intended it should be accounted for in this way. Without such an understanding and assent it is not entirely clear but there was a reducing to possession by Darling. With that element in the transaction there can be no question about it. Schouler's Dom. Rel. p. 120. We think the view taken secures justice without peril to the oratrix.

Decree reversed and cause remanded.