## BARBANO v. CENTRAL–HUDSON STEAMBOAT CO.

## CHASE NAT. BANK OF CITY OF NEW YORK v. CENTRAL–HUDSON STEAMBOAT CO. et al. (two cases).

### No. 152.

Circuit Court of Appeals, Second Circuit.

Jan. 12, 1931.

Murray, Aldrich & Webb, of New York City (Hugh L. M. Cole, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Central-Hudson Steamboat Company, a New York corporation, in 1899 executed a first mortgage upon all its property to secure 500 5 per cent. bearer bonds of $1,000 each, maturing May 1, 1919. For convenience, this will be referred to as the first mortgage. In 1913 the steamboat company executed another mortgage upon all its property, also designated as a "first mortgage," although expressly made subject to the lien of the 1899 mortgage. The 1913 mortgage will hereinafter be called the refunding mortgage. The refunding mortgage was to secure 750 5 per cent. bearer bonds of $1,000 each, maturing April 1, 1933. The purposes of the mortgagor, as stated in its resolution of authorization as well as in the refunding mortgage itself, were to refund the 500 bonds outstanding under the first mortgage and to raise additional capital to the extent of $250,000. Neither purpose was fully carried out. Only $93,000 of refunding mortgage bonds were issued for cash, and less than half of the first mortgage bonds were exchanged for refunding mortgage bonds. A total of $297,000 of the first mortgage bonds remained outstanding and nonexchanged. On behalf of the holders of these outstanding bonds, a suit to foreclose the first mortgage was brought by the trustee thereunder and has produced a fund insufficient to pay the principal amount of such bonds.

The appellants were holders of first mortgage bonds who exchanged them for refunding mortgage bonds. Mrs. Morschauser's exchange of bonds, six in number, occurred on June 27, 1916, and has been selected as a test case. Her first mortgage bonds were delivered to the trustee under the refunding mortgage who thereupon delivered to her in exchange a like number of refunding bonds. Her first mortgage bonds stamped "Canceled" are in the possession of the trustee. Precisely when they were so stamped does not appear. Notwithstanding this exchange, Mrs. Morschauser claims to be entitled to share in the fund produced by foreclosure pari passu with the first mortgage bondholders who did not exchange. Her contention is (1) that the exchange did not extinguish her rights as a first mortgage bondholder; and (2) that, if it did, the exchange

Greenbaum, Wolff & Ernst, of New York City (Edward S. Greenbaum, of New York City, and Allen S. Reynolds, of Poughkeepsie, N. Y., of counsel), for appellants.

was induced by fraud, giving her a right to rescind it and to have her rights as a holder of first mortgage bonds restored A statement of the facts upon which fraud is predicated will be postponed until that contention is under consideration.

■ It is not denied that, if the first mortgage bonds which were exchanged were thereby extinguished, then the nonexchanged bonds are entitled to the whole of the security provided by the first mortgage. The dispute is whether they were so extinguished. That issue must be determined by the terms of the mortgagor's proposal for exchange, because the bondholders who make the exchange thereby accept that proposal. See N. Y. Security & T. Co. v. Louisville, E. & St. L. Consol. R. Co., 102 F. 382, 398, et seq. (C. C. Ind.), and cases there cited; 3 Thompson, Corporations (3d Ed.) § 2403. Cf. Anthony v. Campbell, 112 F. 212 (C. C. A. 8), Sanborn, J., dissenting. The mortgagor's proposal is to be found in the provisions of the refunding mortgage. The twenty-fourth paragraph, set out in full in the margin,[1] provides that $500,000 of the refunding bonds shall be deposited with the trustee to be applied for "taking up or paying" a like amount of outstanding first mortgage bonds. The trustee is to deliver the deposited bonds, or "so many thereof as may from time to time be necessary," in exchange for first mortgage bonds, "bond for bond," or, in case such exchange cannot be made, the trustee is, at maturity of the first mortgage bonds, to sell the deposited bonds, or so many as may be necessary, for cash and apply the proceeds to pay the outstanding first mort-

gage bonds, and "the said outstanding bonds, when paid or exchanged as aforesaid, shall be stamped upon the face by said trustee 'Canceled,' and shall be held and retained by said Trustee." We construe this to mean, as did the special master and the court below, that the first mortgage bonds were to be canceled as exchanged from time to time, rather than, as the appellants contend, to be canceled in gross and only on condition that all the outstanding bonds were exchanged or paid. So construed, the surrender of first mortgage bonds in exchange for refunding bonds was for cancellation, and was cancellation. See Union Trust Co. v. Ill. Midland Ry. Co., 117 U. S. 434, 474, 6 S. Ct. 809, 29 L. Ed. 963. As was said by Judge Woods in the New York Security & Trust Co. Case above cited, page 399 of 102 F.:

"The question is one of contract or intention and little aid is to be derived from the cited cases, since in every instance they have turned upon the construction or force to be given to a writing or contract quite different from the articles of consolidation by which the present dispute must be determined."

No authority construing a precisely similar provision has been adduced, but we find nothing in the cases to throw doubt upon the correctness of the interpretation we have given the terms of the refunding mortgage. The conduct of the parties subsequent to the exchange was consistent with this interpretation. Interest was paid and accepted upon the refunding bonds, not upon the first mortgage bonds exchanged for them. While the same rate was paid on both, until maturity of the first mortgage bonds, the respective dates of payment differed.

■ When the nonexchanged first mortgage bonds matured they were extended by agreement between their holders and the mortgagor at an increased rate of interest, 7 per cent. This was contrary to what was contemplated by the twenty-fourth paragraph of the refunding mortgage, and it is contended that thereby the holders of nonexchanged original mortgage bonds forfeited any claim to priority which they might otherwise have had. It may be conceded that an agreement for the payment of a higher rate of interest during extension is invalid as against a junior lienor in so far as it impairs the latter's security. Jones, Mortgages (8th Ed.) § 444. It is a very different thing to assert that such an agreement enhances the rights of a junior lienor. No authority for such a proposition has been

---

[1] "Twenty-fourth. It is further agreed that bonds to the amount of $500,000 (being part of the issue above provided for), shall be forthwith executed by the party of the first part and deposited with the Trustee, which bonds shall be applied solely for the purposes of taking up or paying certain bonds now outstanding and secured by a certain mortgage upon the property hereinbefore described, to wit: A mortgage made by the party of the first part to The City Trust Company of New York, as Trustee, bearing date the 20th of April, 1899, and recorded in Orange County records of Mortgages, Liber 383, at page 92, upon which there are outstanding and unpaid bonds to the amount of $500,000. The said Trustee shall issue and deliver the said five hundred bonds, or so many thereof as may from time to time be necessary, to the holders of said outstanding bonds in exchange for said outstanding bonds, bond for bond, or shall in case such exchange cannot be made, at the maturity of said outstanding bonds, sell said five hundred bonds, or so many thereof as may be from time to time necessary, for cash, at a price to be agreed upon by the parties to this instrument, and apply the proceeds of said sale to the payment of said outstanding bonds, the said outstanding bonds, when paid or exchanged as aforesaid, shall be stamped upon the face by said Trustee 'Canceled,' and shall be held and retained by said Trustee."

produced. For a contrary implication, see Kraft v. Holzmann, 206 Ill. 548, 69 N. E. 574; Lomas & Nettleton Co. v. Isacs, 101 Conn. 614, 127 A. 6. If, as this contention assumes, the nonexchanged first mortgage bonds were entitled to priority on May 1, 1919, it is impossible to see on what theory the extension agreement can enlarge the rights of the junior bondholders.

The claim to rescind for fraud is based upon a conversation had by Justice Morschauser with former Governor Odell, president of the steamboat company, in June, 1916. Justice Morschauser's confidential secretary, Mr. Cunley, also testified to talks he had with Governor Odell and with Mr. Sherrell, but the messages he carried to Justice Morschauser as a result of these talks are not important, since they were, in substance, repeated by Governor Odell in his later conversation with Justice Morschauser. Both Governor Odell and Mr. Sherrell are dead. The conversation in question related to a request by Odell that Mrs. Morschauser's bonds be turned in for exchange so that the company's plan of raising an additional sum of $250,000 could be carried through. The substance of it was that, if the plan did not go through, the exchanged bonds would be returned. Most of the statements attributed to Odell are clearly promissory in character. Justice Morschauser knew that some of the bondholders besides Mrs. Morschauser had not exchanged, because he testified that Odell said, "I think they will make their exchanges if they know you are coming in." It is testified that he also said, "They are nearly all in," and this is relied upon as a false statement of an existing fact, which induced Mrs. Morschauser to make her exchange. The special master gave the evidence very careful consideration, and reported that "the fundamental allegations of fraud and false representations have not been sufficiently proven to warrant any relief herein." We are asked to reverse this finding as entirely unsupported by the evidence.

A party seeking rescission for fraud has the burden of clearly establishing the fraud and his reliance upon it. Atlantic Delaine Co. v. James, 94 U. S. 207, 24 L. Ed. 112. Without reflecting in the slightest degree upon the good faith of the witnesses, it may be said that an interested memory of a conversation which occurred thirteen years ago could easily import "They are nearly all in" for such a statement as "We can get them all in if you will lend your name to the exchange." Justice Morschauser is doubtless entirely accurate when he says, "I assumed at the time that everyone, that nearly all of us had done it—when I say 'us' I mean all the bonds had been exchanged," because he had confidence in anything Odell was in. As he says, he would have bought new bonds had Odell asked it. It is in fact quite as easy to believe that Justice Morschauser translated his mental picture of an exchange of bonds made complete by the power of Odell facilitated by the action of a man as prominent in the neighborhood as himself, into a representation by Odell that nearly all exchanges had already been effected, as it is to believe that Odell would deliberately lie to his intimate political friend and defraud him. Moreover, even if there was a definite representation that nearly all bonds had already been exchanged, it is far from clear that this was what induced the exchange. Justice Morschauser repeatedly says that he expected the bonds to be returned unless the whole plan went through, including the getting of the new money. It is a fair inference that the expectation that Odell would carry through the whole project, not merely that nearly all old bonds had already been exchanged, was what motivated Justice Morschauser. The master found that he ordered the exchange solely because he was friendly with the Governor, and because Odell asked him to do so and told him that the new money was going back into the company and that the new bonds were to become first mortgage bonds when the old bonds were all exchanged. We cannot say that the evidence of fraud was so clear as to compel a reversal of the master's findings, confirmed by the District Court.

This conclusion makes it unnecessary to consider the disputed questions of law relating to rescission as against other holders of bonds, both original and refunding, who acquired their bonds after Mrs. Morschauser had made her exchange and possibly in reliance thereon.

Accordingly the order is affirmed.