M. Henry Martuscello, J.
This is an action to foreclose a second mortgage made by defendant Mortimer Danzer to the plaintiff herein, dated November 15, 1951. In November, 1953 co-ordinating interests in and to said mortgage and the bond which it secured, were assigned to the defendants John Bichler and Milton M. Eisenberg, so that said defendants and the plaintiff are the joint owners thereof.
The complaint alleges in substance that the defendants have defaulted under the terms and conditions of the second mortgage and the bond secured thereby by reason of the failure of the defendants to pay installments of principal in the sum of $2,450 each which became due on September 1, 1954 and December 1, 1954 under the first mortgage, and by reason of the alleged diminishment and impairment of the security of the second mortgage; and that therefore plaintiff has elected to declare the entire unpaid balance of the principal sum of the second mortgage due and payable.
*412 The answers of the defendants John Bichler and Milton Eisenberg admit and adopt the allegations of the complaint and, as a further cause of action in favor of the owners and holders of the second mortgage, allege that there is an unpaid balance of $30.27 which, under the second mortgage, was due on November 15, 1954. Their answers further allege an additional default to the effect that the security of the second mortgage was impaired if payments of amortization under the first mortgage were made in sums less than $2,450 each, quarter annually, or if the interest payments were made under said first mortgage at a rate greater than 4%% per annum, as provided in the said first mortgage at the time of the creation of the said second mortgage in November, 1951.' The defendants Bichler and Eisenberg further join the plaintiff in requesting foreclosure of the second mortgage.
The answer of the defendants Weiss, holders of a third mortgage on the premises in question, consists substantially of a general denial and does not seek a foreclosure of their mortgage.
The answer of the defendant Morgenstern, the present owner of the premises in question, consists of a general denial of the alleged defaults and two affirmative defenses. The first affirmative defense alleges in substance that said defendant duly made payments of principal and interest in accordance with the terms of the first mortgage as modified and the second affirmative defense alleges payment of the sum of $30.27 to defendant Bichler allegedly due the latter on November 15, 1954.
Upon the pleadings as amended and upon the concessions made and the evidence adduced at the trial, the material facts are as follows: The defendant Mortimer Danzer, on November 15, 1951 executed and delivered a purchase-money' second mortgage and bond in favor of the plaintiff 100 Eighth Avenue Corp. in the sum of $90,800, with interest at 5%, covering the premises in question, payable in monthly installments of $605.34 beginning December 15, 1951 and expiring January 1, 1959 when any unpaid balance becomes due and payable. The said monthly payments were to be applied first to the payment of interest on all unpaid balances computed from the date of the said bond and mortgage and the balance of said installments to be applied on account of reduction of the principal sum.
The said mortgage contained a subordination clause reading in part as follows: “ This mortgage is subject and subordinate to the lien of the existing first mortgage given to secure the payment of $245,000 and interest, recorded in the office of the *413 Register of the County of Kings, in Liber 10007 Section 4; Block 1067 of Mortgages at page 556 and reduced to the sum of $235,200 and this mortgage shall be subject and subordinate to any extensions thereof and to any mortgage or consolidated mortgage which may be placed on the premises in lieu thereof or to any extensions thereof provided in all such events (a) that the interest rate thereof shall not be greater than 4%% per annum and provided (b) the amortization shall be no different as presently is payable under the said mortgage ”.
Other pertinent provisions of the mortgage sought to be foreclosed herein read as follows:
‘ ‘ 1. That the mortgagor will pay the indebtedness as herein-before provided. * * *
“ 7. That the whole of said principal sum and interest shall become due, at the option of the mortgagee, after default in the payment of any instalment of principal on this mortgage for 20 days, or after default in the payment of any instalment of principal on any prior mortgage for 20 days, or after default in the payment of interest on this or any prior mortgage for 15 days. * * *
“ 10. That neither the value of the mortgaged premises nor the lien of this mortgage will be diminished or impaired in any way by any act or omission of the mortgagor, and that said mortgagor will not do or permit to be done to, in, upon or about said premises or any part thereof, anything that may in any wise substantially impair the value thereof or substantially weaken, diminish or impair the security of this mortgage. This covenant shall run with the land and bind the mortgagor, his heirs and all subsequent owners of said premises.”
On August 18, 1954 the East Brooklyn Savings Bank entered into an agreement with the then owner of the premises involved, Debby Land Corp., modifying the terms of payment of the first mortgage by reducing the quarter annual amortization payments from $2,450 to $1,041.25 commencing September 1, 1954, and increasing the interest rate on the unpaid principal balances from 4y2% to 5% per annum from June 1, 1954. All other terms of the said mortgage and the bond secured thereby remained in full force and effect.
With respect to the monthly installments of $605.34 due on the mortgage under foreclosure, the practice was established of making payment thereof by three separate checks for the respective interests of the holders thereof, namely, to 100 Eighth Avenue Corp., $544.81; to John Bidder, $30.27; to Milton M. Eisenberg, $30.26. The check received by defendant Bidder for his share of the installment due on November 15, *414 1954 was unsigned through inadvertence. The said check in ■the sum of $30.27 was dated November 12, 1954 and was received by Bichler on or before November 15, 1954. Bichler, however, did not return the said check nor did he advise the defendant Morgenstern of its defect. The latter was not apprised of the fact that said check was unsigned until after the commencement of the action, namely, on February 19, 1955, when Bichler made disclosure thereof for the first time in an affidavit submitted by him in opposition to a motion for summary judgment made by the defendant Morgenstern. However, in his reply affidavit thereto, Morgenstern offered to pay the amount of the check. Tender of payment of the sum of $30.27 ,was again made during the course of this trial. On both occasions tender was refused.
On the foregoing facts the questions for determination are: (1) whether the plaintiff has the right to foreclose as a result of the modification of the first mortgage, and (2) whether there is a basis for relieving the defendant Morgenstern from his default in the payment of a portion of the principal and interest that became due November 15, 1954.
It is the contention of the plaintiff that since the owner of the property did not pay the principal and interest on the first mortgage in accordance with the terms of such first mortgage as it existed prior to the modification, the maturity date of plaintiff’s mortgage could be accelerated by the express provisions of above paragraph “7” thereof. Plaintiff predicates this claim on the ground that the modification agreement was not binding upon the holders of the junior lien without their knowledge, privity or consent.
It is well settled that a subsequent modification agreement between a mortgagee and a mortgagor or owner of the mortgaged premises modifies the terms of the original mortgage with the same force and effect as if the terms of the modification agreement were originally incorporated in the mortgage. (Royal Court Realty Co. v. Thomas, 259 App. Div. 313, 316; Mortgage Comm. of State of N. Y. v. Fay, 255 App. Div. 622, 624, affd. 281 N. Y. 637; Tiernan Realty Co. v. Title Guar. & Trust Co., 176 Misc. 1071, 1075.)
The consent of a second mortgagee is not required in order to validate a modification of the terms of a first mortgage. (Lowenfeld v. Wimpie, 139 App. Div. 617, affd. 203 N. Y. 646; Schwartz v. Smith, 143 App. Div. 297, affd. 207 N. Y. 714; Clare v. New York Life Ins. Co., 178 App. Div. 877; Barbano v. Central-Hudson Steamboat Co., 47 F. 2d 160.) Accordingly, in the case at bar, when defendant Morgenstern paid to the first *415 mortgagee the installments of principal and interest pursuant to the terms of the modification agreement, there was no breach of paragraph “ 7 ” of the mortgage under foreclosure although such payments were different from the payments initially provided for in the original first mortgage. Compare Bohland v. Horn (107 N. J. Eq. 570) holding that where a junior mortgage provided that the principal thereof became due on default in making payments on a prior mortgage, the junior mortgagee could not treat the making of reduced payments, accepted by the prior mortgagee, as a default.
The applicable general rule relating to acceleration of mortgages and the right to foreclose is stated in Corpus Juris Secundum (Vol. 59, Mortgages, § 495(3), p. 783) as follows: “ A mortgagor’s default in the performance of any covenant or agreement contained in the mortgage does not operate to accelerate the maturity of the principal debt secured by the mortgage unless there is a specific stipulation to that effect.” And at page 784 the following statement appears: “ An acceleration clause, in order to be enforceable so as to mature the entire debt for purposes of foreclosure, must be clear and certain * * * an accelerating provision will not be supplied by inference.” In Wiltsie on Mortgage Foreclosure (5th ed., Vol. 1, § 39, p. 74) the rule is stated as follows: “As a general rule, in the absence of an [acceleration] clause, the right to foreclose does not arise before the maturity of the debt secured by the mortgage, even though the security is likely to be impaired in the interim. ’ ’ (Citing Campbell v. Macomb, 4 Johns. Ch. 534.)
In view of the foregoing principles, even if it is assumed that the subordination clause of the mortgage herein was breached, such breach did not operate to accelerate the maturity of the principal debt in the absence of any specific stipulation to that effect in the mortgage. For the same reason the lack of an acceleration clause in the covenant against impairment of the security (par. 10, supra) precludes the plaintiff from the right to foreclose.
The case of Remodeling & Constr. Corp. v. Melker (65 N. Y. S. 2d 738, affd. 270 App. Div. 1053) relied upon by plaintiff, is not applicable to the ease at bar. There the first mortgagee entered into a modification agreement with the owner of the property advancing the maturity date of the first mortgage by two years, so that it became due prior to the second mortgage and increased the payments due on the first mortgage about two and a quarter times those due at the time the defendants acquired their second mortgage, and resulted in almost *416 immediate default under the first mortgage, as modified. The second mortgagee set up an affirmative defense based upon the principle that a senior lienor may not prejudice the rights or impair the security of a junior lienor, and the defense was sustained, the court holding that the modification agreement was ineffective as to the holders of the second mortgage.
In the case at bar the junior mortgagee is not resisting the foreclosure of a senior lien, the terms of which have been so modified as to render the junior lien practically valueless. Here the junior lienor is seeking the affirmative right to foreclose on the ground that the security of the junior mortgage has been impaired. Although the evidence adduced at the trial herein indicates that there has been an impairment of a sort, yet the proof fails to establish extent of such impairment. Under the circumstances of this case and in the absence of an acceleration clause the impairment did not ripen into such a default in the terms of the mortgage as to entitle the plaintiff to declare due the unpaid balance of the principal debt before its maturity.
The case of Barbano v. Central Hudson Steamboat Co. (47 F. 2d 160, supra) supports the position taken by the defendant herein. That was an action to foreclose a first mortgage; and one of the questions involved was whether the first mortgage lost its priority when the plaintiff entered into an agreement for the extension of its mortgage at an increased rate of interest. The defendants, the holders of a second mortgage, claimed that they gained priority over the plaintiff’s mortgage because of such extension agreement. The court, in holding that plaintiff’s priority was not lost, stated at page 162: " It may be conceded that an agreement for the payment of a higher rate of interest during extension is invalid as against a junior lienor in so far as it impairs the latter’s security. Jones, Mortgages (8th Ed.) § 444. It is very different thing to assert that such an agreement enhances the rights of a junior lienor.”
Plaintiff further contends that an acceleration clause is unnecessary because upon the impairment of the security of the second mortgage the holders thereof could invoke the provisions of paragraph numbered “ 1 ” of the mortgage and exercise the power of sale therein as provided in subdivision 3 of section 254 of the Real Property Law.
That section provides, in substance, that “ A covenant ' that the mortgagor will pay the indebtedness, as hereinbefore provided,’ must be construed as meaning that the mortgagor * * * doth covenant and agree to pay to the mortgagee * * *, the principal sum of money secured by said mortgage, and also the interest thereon as provided by said mortgage. *417 And if default shall be made in the payment of the principal sum or the interest that may grow due thereon, or of any part thereof, or in case of cmy other default, that then and from thenceforth it shall be lawful for the mortgagee, * * * to enter into and upon all and singular the premises granted * * * and to sell and dispose of the same ”. (Emphasis supplied.)
In my opinion plaintiff’s contention is without merit. The language of the statute “ or in case of any other default ” must be construed under the familiar rule of ejusdem generis, as referring to the defaults of payment of principal or interest or any other sums advanced by the mortgagees to secure the indebtedness, and not to any other defaults of an entirely different nature.
If the Legislature of this State had intended to include defaults of an entirely different nature it could have readily done so in a more specific manner. It could have authorized the acceleration of the principal sum due by including in section 254 of the Real Property Law such language as “ or the breach of any covenant or agreement herein contained ” as specifically enacted by the Legislatures of other States. (See 1945 Report of N. Y. Law Rev. Comm., pp. 287-299 [N. Y. Legis. Doc., 1945, No. 65 (H)], Appendices B, C, pp. 49-61.)
With respect to the default in making the payment in the sum of $30.27 to the defendant Bichler, due on November 15, 1954, I feel that under the circumstances herein the defendant Morgenstern should be relieved therefrom. As previously stated, the check for that small amount was dated November 12, 1954 and was received by Bichler on or before its due date, November 15, 1954 and has been retained by him ever since. I am satisfied that the failure to sign the check was not intentional but was due to inadvertence, inasmuch as Morgenstern mailed at the same time duly signed checks to the plaintiff and to the defendant Eisenberg covering the respective installments due them on November 15,1954. Moreover, it appears that not only did Morgenstern have sufficient funds in his checking account to cover payment of all of these checks, but also that he thereafter sent properly executed checks to the three mortgagees for subsequent installments due them; and that Bichler also retained such later checks received by him without making any disclosures whatsoever with respect to the check of November 12. In my opinion the retention of the defective check by Bichler until after the expiration of the grace period and the lack of knowledge of its defect by Morgenstern until some time in February, 1955 present a situation justifying this court *418 in relieving said defendant. Under the circumstances it would be inequitable and unconscionable to permit this technical and unwillful default in payment of $30.27 to accelerate the due date of a mortgage which has more than three years to run and on which there is an unpaid balance of over $80,000.
Courts of equity have, under comparable circumstances, relieved a mortgagor or owner and denied foreclosure. (See Germania Life Ins. Co. v. Potter, 124 App. Div. 814; Domus Realty Corp. v. 3440 Realty Co., 179 Misc. 749, affd. 266 App. Div. 725; Nove Holding Corp. v. Schechter, 218 App. Div. 479; Trowbridge v. Malex Realty Corp., 198 App. Div. 656. Cf. Wedab Corp. v. Weinger, 283 App. Div. 877.)
Motions made by defendant Morgenstern granted and judgment directed for defendant Frank N. Morgenstern dismissing the complaint and canceling the Us pendens as well as dismissing the further causes of action in the answers of the defendants Bichler and Eisenberg.